UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

APRIL SMITH,

    Plaintiff,

v.                                    Case No.  8:24-cv-1515-WFJ-SPF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for supplemental security income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, the Court recommends that the Commissioner's decision be reversed.

I.

**A.  Procedural Background**

Plaintiff applied for a period of disability, DIB, and SSI on April 7, 2021, alleging disability beginning June 11, 2011 (Tr. 334, 341). The Commissioner denied Plaintiff's claims initially and upon reconsideration (Tr. 131-32, 151, 163). Plaintiff then requested an administrative hearing (Tr. 262-63). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 37-63). At the hearing, Plaintiff amended her alleged disability onset date to April 7, 2021, and withdrew her DIB application (Tr. 39). Following the hearing, the ALJ issued a decision finding Plaintiff not disabled and accordingly denied her claim for benefits (Tr. 11-21). Subsequently, Plaintiff requested review from the Appeals

Council, which the Appeals Council denied (Tr. 1-7). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff was born on March 24, 1963, and amended her alleged disability onset date from June 11, 2011 (when she stopped working), to April 7, 2021 (Tr. 11, 334). Plaintiff has a high school education and past relevant work experience in the IT field as a network analyst and a security administrator for a company that facilitated electronic payment systems for credit unions (Tr. 42-43). Plaintiff claimed she stopped working in June 2011 due to chronic neck and back pain and accompanying dizziness and imbalance (Tr. 17). Specifically, Plaintiff alleges she suffers from degenerative disc disease of the back and neck, herniated and bulging discs in her back and neck, type 2 diabetes and associated neuropathy, transient ischemic attack ("TIA," or mini strokes), anxiety, depression, chronic eczema, COPD, and a left arm impairment (Tr. 364).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since April 7, 2021, her alleged onset date (Tr. 13). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had these severe impairments: osteoarthritis, cervical canal stenosis, lumbago, chronic pain syndrome, diabetes mellitus, chronic obstructive pulmonary disease, pancreatitis, old left shoulder replacement, and stroke residuals (Tr. 14). Notwithstanding these impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1 (Tr. 16). The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with these limitations:

> [Plaintiff is] able to lift and carry no more than 10 pounds occasionally, and less than 10 pounds frequently; able to stand and/or walk for no more than about two hours of an eight-hour workday while using a cane as an ambulatory aide; able to sit for no more than 6 hours of an 8-hour workday with normal breaks; able to occasionally climb ramps and stairs of three to four steps; must avoid climbing ladders, ropes, or scaffolds; no more than frequent balancing; no more than occasional stooping, kneeling, and crouching; must avoid crawling; requires use of a cane for walking; can frequently reach, but no reaching overhead with the left upper extremity; no more than frequent overhead reaching with the right non-dominant upper extremity; must frequently handle and finger; must avoid concentrated exposure to extreme cold, excessive vibrations, noxious fumes and pulmonary irritants; and must avoid all use of dangerous moving machinery and unprotected heights.

(Tr. 16). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints. He determined that, although the evidence established underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16-20).

Considering Plaintiff's impairments, the assessment of a vocational expert ("VE"), Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could perform her past relevant work "as a network analyst and a security compensation coordinator" (Tr. 20). Accordingly, the ALJ found Plaintiff not disabled (Tr. 21).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which will likely result in death or which has lasted or will likely last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy given his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation

marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff argues the ALJ (1) relied on incomplete VE testimony in formulating Plaintiff's RFC; and (2) failed to incorporate the results of the psychiatric review technique ("PRT"), designed to assess a claimant's mental impairments, into Plaintiff's RFC.

### A. Plaintiff's RFC and the VE's Testimony

Plaintiff challenges the completeness of the hypothetical question the ALJ posed to the VE in light of Social Security Ruling 96-9p regarding a claimant's use of a hand-held assistive device. Plaintiff argues that the VE's testimony does not provide substantial evidentiary support for the ALJ's RFC assessment because, of the three hypothetical questions the ALJ

posed to the VE, the one the ALJ relied on did not ask the VE to assume a claimant who requires a walker.

Plaintiff flip-flops steps three and four of the sequential evaluation process. Panning out, the issue is whether the ALJ's decision satisfied the Commissioner's step five burden of proving that Plaintiff is not disabled. To meet this burden, the ALJ relied on the VE's testimony at step four. But because the ALJ's RFC findings after step three served as the predicate to the step four hypothetical that the ALJ posed to the VE, the more succinct question is whether the ALJ meaningfully considered Plaintiff's need for a walker in light of SSR 96-9p when formulating both Plaintiff's RFC and the hypothetical questions posed to the VE. The undersigned finds he did not.

> Social Security Ruling ("SSR") 96-9p provides:
>
> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). This ruling recognizes that using a hand-held assistive device can erode the occupational base for sedentary work. *Id.* "Under SSR 96-9p, a claimant must present medical documentation (1) establishing her need for a cane or other device and (2) describing the circumstances for which it is needed." *Charity v. Comm'r of Soc. Sec.*, No. 6:19-cv-1075-Orl-EJK, 2020 WL 5797623, at *3 (M.D. Fla. Sept. 29, 2020) (citation omitted). Absent such a showing, the ALJ is not required to include the use of an assistive device in the RFC or hypothetical to the VE. *Id.* A prescription or lack of a prescription for an assistive device is not necessarily dispositive of medical necessity. *See Kendrick v. Comm'r of Soc. Sec.*, No. 5:17-cv-244-Oc-18PRL, 2018 WL 4126528, *3 (M.D. Fla.

July 9, 2018), *report and recommendation adopted*, 2018 WL 4112832 (M.D. Fla. Aug. 29, 2018). "When the record reflects a purported need for a hand-held assistive device, but the ALJ fails to affirmatively reject the need for such a device, the Court cannot be certain whether the ALJ intended to recognize it." *Williams v. Acting Comm'r of Soc. Sec.*, No. 3:18-cv-764-J-MCR, 2019 WL 2511592, at *4 (M.D. Fla. June 18, 2019) (citing *Drawdy v. Astrue,* No. 3:08-cv-209-J-HTS, 2008 WL 4937002, at *4 (M.D. Fla. Nov. 17, 2008)). On the other hand, where an ALJ affirmatively rejects the need for a hand-held assistive device and gives reasons for doing so based on substantial evidence, the ALJ has performed the necessary analysis. *Wright v. Colvin*, No. CV 313–079, 2014 WL 5591058, at *5 (S.D. Ga. Nov. 3, 2014).

After carefully reviewing the record, the undersigned finds that the ALJ did not meaningfully engage with SSR 96-9p. This error undermines the ALJ's RFC determination and pulls the substantial evidence rug out from under the ALJ's decision in general. Plaintiff testified that since her April 7, 2021 onset date she has had "balance issues, tightness in my upper arms, a lot of falls, near falls, just not really coordinated because of the pressure that was being put on my spinal cord." (Tr. 45). Plaintiff testified that she requires a walker anytime she leaves the house but does not use it at home, because her "apartment is so small that [she] can use the walls and furniture to grab onto." (Tr. 48). When the ALJ asked, "Do you generally use a walker or a cane?", she answered, "Walker." (Tr. 54). Plaintiff testified that she has relied on a walker since 2021, when a doctor prescribed it (Tr. 55).

The ALJ acknowledged this: "At the hearing, [Plaintiff] mostly described difficulties with standing and walking, and she indicated [a] need for an assistive device while standing and walking." (Tr. 17). And "[t]he claimant testified that she is in chronic pain. Every day, she said she gets around using a walker due to balance issues and dizziness." (*Id.*). The ALJ

7

found this testimony about Plaintiff's "need for an assistive device while standing and walking" to be "mostly persuasive" and "generally consistent with objective medical evidence." (*Id.*).

At the hearing, the ALJ consulted a VE and asked him three hypothetical questions. The first assumed a claimant with Plaintiff's age, work experience, and education level who is limited to sedentary work, requires the use of a cane for walking, and occasionally reaches overhead with her left arm (Tr. 58). The VE testified that this hypothetical claimant could perform Plaintiff's past relevant work as a network analyst as the job is generally performed (Tr. 59). The second hypothetical question adds the limitation that the claimant cannot reach overhead with her left arm at all and needs a cane to both stand and walk (*Id.*). The VE again answered that such a hypothetical claimant could perform the network analyst job, because the cane "would just mean getting to the workstation. Once you're at the workstation, you would have no problem." (*Id.*).

Finally, the third question: "Hypothetical three is hypo one, plus the additional restriction of hypo two, no reaching overhead with the dominant upper extremity . . . Hypo three adds that a walker is needed for standing and walking. Does that change your answer?" (Tr. 60). After initially answering no, the VE backtracked and confirmed that "if a walker is indeed medically required for all standing and walking, then that person could not perform the claimant's past work or any other competitive work[.]" (Tr. 62). After summarizing Plaintiff's medical treatment, the ALJ found Plaintiff "limited to sedentary level work with an additional limitation on the need for an assistive device for standing or walking." (Tr. 18).

The ALJ's RFC determination included a more specific limitation: Plaintiff needs "a cane as an ambulatory aide;" and "requires the use of a cane for walking[.]" (Tr. 16).[1]

But medical evidence shows that Plaintiff requires a walker, not a cane, and that she needs it for standing and walking. How the ALJ decided that Plaintiff can make do with a cane is unclear. Throughout the 4,882-page administrative record, a cane is mentioned only a handful of times. On a 2012 function report, Plaintiff wrote that she uses both a walker and a cane and that a "Health Dept Doc" had prescribed a cane "years ago." (Tr. 397). In 2018, Plaintiff requested a cane during a hospital admission to St. Anthony's Hospital because she was weak and dizzy and falling frequently (Tr. 3050). In 2019, a physical therapist from St. Anthony's Hospital noted Plaintiff was using both a cane and a rolling walker (Tr. 2657). And a hospital admission note from Palms of Pasadena Hospital after Plaintiff fell and hit her neck in November 2020 stated that Plaintiff has a walker and a cane at home (Tr. 3244). All of these references to a cane predate Plaintiff's alleged disability onset of April 2021, and each reference is directly traceable to Plaintiff's self-reports.

In contrast, there are copious post-onset references to Plaintiff's use of and need for a walker when standing and walking. To be sure, some references are based on Plaintiff's self-reports, but more are medically-imposed limitations. In October 2021, on a Form SSA-3441 Disability Report – Appeal, Plaintiff wrote that she is "able to walk but only with the walker. I'm still getting dizzy when standing or walking." (Tr. 417). Later that month, Plaintiff went to the ER at Palms of Pasadena Hospital, because "while ambulating from the bathroom with the use of her walker she suddenly fell resulting in pelvic pain." (Tr. 3131) A "CT pelvis

---

[1] The Commissioner concedes that the ALJ erred in stating that Plaintiff needs a cane for walking only (rather than standing and walking) but argues this error is harmless (Doc. 15 at 6).

9

revealed acute displaced [fracture] of the right inferior pubic ramus with surrounding soft tissue swelling and hematoma." (*Id.*).  During that admission, Thomas Mixa, M.D. determined that Plaintiff "may weightbear as tolerated with a rolling walker" (Tr. 3146).  In November 2021, St. Anthony's emergency room physician Nii Sai Torto, M.D., who treated Plaintiff after she fell and hit her head, reported Plaintiff's comment that she "uses a walker at baseline to walk." (Tr. 4826).  Plaintiff was admitted to St. Anthony's for additional tests, and a physical therapist observed that Plaintiff could walk 15 feet using a four-wheeled walker with caregiver assistance but said she felt like her legs were "getting close to giving out." (Tr. 2898).

During a November 29, 2021 office visit with primary care physician's assistant David Pedersen, Plaintiff had an abnormally slow gait and stance and used a rolling walker (Tr. 3546).  Next, Mr. Pedersen noted Plaintiff relied 100% on a rolling walker at a December 29, 2021 office visit (Tr. 3543).  In July 2022, Dr. Pedersen again noted that Plaintiff had an abnormal, slow, and steady gait with a rolling walker (Tr. 3636).

At the agency's request, Marc Puchir, D.O., performed a consultative examination of Plaintiff on December 7, 2022, to evaluate her lower back pain (Tr. 4280-84).  Dr. Puchir summarized Plaintiff's medical history and examined Plaintiff.  He observed: "Gait antalgic. Station normal.  Used a rolling walker, prescribed by a physician.  Used both indoors and outdoors for predominately balance.  Observed ambulating with and without the walker.  The claimant's gait improved in speed and confidence with the walker and it is therefore felt to be medically necessary." (Tr. 4282).  Dr. Puchir assessed Plaintiff's prognosis as "poor." (Tr. 4284).

During a February 2023 surgical consult concerning Plaintiff's diagnosis of carotid artery stenosis, the physician's assistant noted that Plaintiff "ambulates with walker." (Tr. 4457). Two months later, in April 2023, neurologist Leana Oppenheim, D.O., examined Plaintiff on referral from Mr. Pedersen. According to Dr. Oppenheim, Plaintiff "on her last appointment was suspected of having Parkinson's disease with tremor and walking difficulties and I started her on ropinirole 3 times a day." (Tr. 4710). Plaintiff complained to Dr. Oppenheim of "falling, unstable gait and feeling 'not control of my legs' she is using a rolling walker and this has progressed for the past few months." (*Id.*). The neurologist was "[c]oncerned since patient has lower extremity weakness, falling, utilization of rolling walker, upper motor neuron signs and Hoffmann sign. I personally contacted Dr. Benjamin Fox of neurosurgery and the patient will be seen in his office urgently. If the patient starts to experience new symptoms she should go to the emergency room." (Tr. 4713).

That is precisely what happened: Plaintiff went to the ER at Morton Plant Hospital on May 1, 2023, for worsening neck pain. They admitted her on the spot and consulted Dr. Fox, who at that point had seen Plaintiff once in his office and had planned to perform outpatient surgery to address Plaintiff's worsening cervical myelopathy (Tr. 4732-33, 4873-75). ER records note that Plaintiff "indicated for couple of years now she has had difficulty with ambulation which required the use of a walker, she is also falling down multiple times in which she uses the walker to provide assistance and stabilization." (Tr. 4873). But her pain had grown so severe that she could not tolerate it at home (Tr. 4733). So Dr. Fox performed an emergency "C3-C6 laminectomy medial facetectomy foraminotomy decompression spinal cord lateral spinal fusions, and correction of cervical kyphoplasty deformity defect[.]" (Tr. 4728).

11

On June 26, 2023, six weeks post-surgery, Plaintiff was "still having some neck pain but overall is doing quite well. She is able to get up and walk with a walker." (Tr. 4866). Less than two weeks later at her July 6, 2023 hearing, she testified that she still had radiating pain and balance issues. She said "it's hard to hold up my head because it just feels like it weighs a ton." (Tr. 45). She admitted, "I feel like I don't have a life because I'm in pain." (Tr. 52). She was using a walker at the hearing and said she cannot stand without it (Tr. 55).

The ALJ did not cite SSR 96-9p, which is not in and of itself reversible error *if* the ALJ's decision reflects that he considered and applied the ruling. Although the ALJ summarized the medical evidence, there is no indication he assessed Plaintiff's RFC through the lens of SSR 96-9p. For example, the ALJ supported his opinion with numerous references to consultative examiner Dr. Puchir's report, stating he "views as persuasive the observations and findings contained in the physical consultative examination report of Dr. Marc Puchir from December 7, 2022 (Exhibit D22F)." (Tr. 19). Yet the ALJ omitted mention of Dr. Puchir's finding that Plaintiff's use of a walker is medically necessary. Instead, the ALJ stated:

> [Dr. Puchir] noted that the claimant suffers from a reduced range-of-motion in the cervical spine, lumbar spine, left shoulder, hips, and knees (Exhibit 22F). He also noted decreased strength and sensation in the claimant's extremities. Taken together, based on this evidence and consideration of hearing testimony, the undersigned finds the claimant limited to sedentary level work with an additional limitation on the need for an assistive device for standing or walking.

(Tr. 18).

The record is replete with references to Plaintiff's need to use a walker to both stand and walk, and the ALJ found Plaintiff's testimony generally consistent with the medical records. But the ALJ does not explain why he found that a cane, rather than a walker, is sufficient for Plaintiff. This failure is especially glaring because the VE testified that a

claimant with Plaintiff's RFC with the additional restriction of needing to use a walker cannot perform Plaintiff's past relevant work.

Ultimately, the Court cannot evaluate whether the ALJ's decision to endorse the RFC predicate included in the second hypothetical posed to the VE (which did not include Plaintiff's need for a walker) was based on substantial evidence. Consequently, the Court finds that the ALJ's decision was not supported by substantial evidence and should be remanded for the agency to re-evaluate Plaintiff's application in light of SSR 96-9p.

### B. ALJ's Consideration of Plaintiff's Mental RFC

Plaintiff's second argument – "The ALJ did not provide this Court with sufficient reasoning to determine whether he conducted the proper legal analysis" – is vague, but the gist is that Plaintiff challenges the ALJ's assessment of Plaintiff's mental impairments and their impact on her RFC (Doc. 14 at 12-17). The Commissioner counters that "the ALJ properly explained his reasons for excluding mental limitations from the RFC assessment." (Doc. 15 at 10). The Court agrees with the Commissioner.

When an ALJ evaluates a claimant's mental impairments at steps two and three, he employs the PRT to assess the claimant's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *Moore*, 405 F.3d at 1213–14. The ALJ incorporates the results of the PRT into the findings and conclusions at steps four and five of the sequential evaluation process. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But the PRT is separate from the ALJ's evaluation of a claimant's RFC, which assesses a claimant's maximum ability to do work despite her impairments. The mental RFC is a more detailed assessment of the

13

claimant's ability to function. *Winschel*, 631 F.3d at 1180. In other words, an ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three. *Id.*

Here, the ALJ applied the PRT and determined that Plaintiff has mild functional limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 14-15). The ALJ found that Plaintiff suffers from depressive disorder, anxiety, and PTSD but that these impairments, considered singly and in combination, cause no more than minimal limitations on Plaintiff's ability to perform basic mental work activities and, therefore, are nonsevere (Tr. 14). Consequently, the ALJ proceeded through the sequential evaluation process and assessed Plaintiff's RFC, clarifying that "[t]he following residual functional capacity assessment reflects the degree of the limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 16).

Contrary to Plaintiff's argument, the ALJ considered Plaintiff's mental impairments when assessing her RFC and properly excluded limitations related to them (Tr. 16-20). The flaw in Plaintiff's argument is that she offers no evidence for additional limitations. At the initial review level in October 2021, state agency psychologist Adrine McKenzie, Ph.D., summarized Plaintiff's medical history and determined she had no more than mild limitations in the four broad functional areas (Tr. 147). At the reconsideration level, Eric Wiener, Ph.D. – a state agency psychologist – reached the same conclusion in December 2022 (Tr. 172).

In formulating Plaintiff's RFC, the ALJ discussed Drs. McKenzie and Wiener's opinions and found them persuasive for two reasons (Tr. 20). First, Plaintiff's mental health treatment was conservative. For example, Plaintiff received treatment and medication

14

management at Directions for Living in 2023, where treatment notes indicate Plaintiff's mental health was stable. In March 2023, Christine Farina, A.R.N.P., noted Plaintiff's diagnoses of depression, anxiety, and PTSD and wrote: "continue medications as prescribed, patient declines changes at this time and is stable." (Tr. 4618-19). Plaintiff denied side effects from her medication and reported "stable mood, good sleep, and good appetite on her medications." (Tr. 4618) She "is engaged in therapy with Casey at DFL and states it is helpful." (*Id.*). Plaintiff confirmed this at the hearing. When her attorney asked her at the hearing about her symptoms, she replied, "I still have depression and anxiety. But it help – the medication does help." (Tr. 52).

Second, the ALJ observed Plaintiff at the hearing and found her "polite, cooperative, focused and attentive while she provided relevant and coherent answers to questions." (Tr. 20). Plaintiff suggests that, by referencing Plaintiff's ability to answer questions at the hearing, the ALJ engaged in "sit and squirm" jurisprudence. "Sit and squirm" jurisprudence occurs when "an ALJ who is not a medical expert [] subjectively arrive[s] at an index of traits which he expects the claimant to manifest at the hearing" and denies the claim if the claimant does not exhibit these traits. *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984) (quotation omitted). In this Circuit, however, it is not inappropriate for the ALJ to observe and comment upon a claimant's demeanor if that observation is not offered as the sole basis for discounting credibility. *See Macia v. Bowen,* 829 F.2d 1009, 1011 (11th Cir. 1987) (citing *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985)); *Watkins v. Comm'r of Soc. Sec. Admin.*, No. 23-12765, 2025 WL 18514, at *15 (11th Cir. Jan. 2, 2025) (finding ALJ "did not ignore medical evidence and impose his own subjective standards; rather, he appropriately considered Watkins's demeanor and appearance at the hearing as one of many factors in

15

assessing Watkins's credibility."). The ALJ did not ignore medical evidence and rely on his subjective observations alone. Substantial evidence supports the ALJ's consideration of Plaintiff's mental impairments.

## IV.

For the foregoing reasons, it is RECOMMENDED:

1. The Commissioner's decision be REVERSED and REMANDED. On remand, the ALJ should specifically consider SSR 96-9p in evaluating Plaintiff's need for a walker.

2. The Clerk be directed to enter final judgment for PLAINTIFF and close the case.

IT IS SO REPORTED in Tampa, Florida, on July 10, 2025.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.